98 So.2d 20

Ex parte METROPOLITAN LIFE INSURANCE COMPANY.

6 Div. 837.

Supreme Court of Alabama.

Oct. 31, 1957.

Meade Whitaker and Cabiniss & Johnston, Birmingham, for petitioner.

H. M. Abercrombie and Jos. S. Mead, Birmingham, for respondent.

GOODWYN, Justice.

The Metropolitan Life Insurance Company petitioned this court for an alternative writ of mandamus to be directed to Honorable J. Edgar Bowron, as Judge of the Tenth Judicial Circuit of Alabama. We ordered issuance of a rule nisi as prayed for and Judge Bowron has made answer thereto.

The question presented is whether the insurance company's motion to transfer the case of Evelyn E. R. Booker, plaintiff, v. Metropolitan Life Insurance Company, a corporation, defendant, from the law side to the equity side of the court is sufficient as against plaintiff's demurrer interposed thereto. The demurrer being sustained, the defendant insurance company filed its petition here for mandamus to review said ruling. That is the proper method of re-view. Ex parte Stember, 262 Ala. 56, 57, 77 So.2d 351; Cannady v. Jinright, 253 Ala. 341, 343, 44 So.2d 737; Ex parte R. A. Brown & Co., 240 Ala. 157, 160, 198 So. 138; Esslinger v. Spragins, 236 Ala. 508, 512, 183 So. 401; Jones v. Wright, 220 Ala. 406, 407, 125 So. 645; Ex parte Louisville & N. R. Co., 211 Ala. 531, 532, 100 So. 843.

The suit at law is on a policy of life insurance issued by the defendant company insuring the life of Luther Booker, now deceased, in the sum of $7,000, the plaintiff being the beneficiary under the policy. The policy was issued in Mississippi in 1948, where the insured resided at the time.

Petitioner-defendant, by its motion, seeks to transfer the suit to equity in order to reform the policy on the ground of mutual mistake or, in the alternative, that the policy "was issued on and pursuant to a unilateral mistake on the part of defendant and fraud or inequitable conduct on the part of said Luther Booker or plaintiff." The motion was filed pursuant to Code 1940, Tit. 13, § 153, which provides as follows:

"§ 153. Equitable defense; how interposed; proceedings on.—If an equitable question, the decision of which should dispose of the cause and which cannot be disposed of in the law side of the court, depends upon the assertion of an equitable right or defense by a party who is defendant or an intervening claimant in such suit at law, such party may assert such right or defense by a written motion filed in the cause, which shall state the substance of the equitable right or defense, and be verified by the affidavit of some person having knowledge of the facts, and the legal sufficiency of such motion may be tested by demurrer and the facts therein may be controverted by affidavit. If it satisfactorily appears to the judge hearing the same that such motion and proof sufficiently assert and show an equitable right or defense, the decision of which should dispose of the cause and which cannot be disposed of in the law side of the court, he shall

so state in his judgment or decree and shall direct therein that the cause be transferred from the law side of the court to the equity side of the court, and the same shall thereupon be docketed and proceed in the equity side of the court."

■ The single question for decision is whether the motion, as last amended, states the substance of an equitable right or defense available to the defendant which should dispose of the cause and which cannot be disposed of in the law side of the court. Plaintiff's demurrer was the appropriate method of testing the sufficiency of the motion. Code 1940, Tit. 13, § 153, supra; Ex parte R. A. Brown & Co., 240 Ala. 157, 160, 198 So. 138, supra. The facts alleged in the motion were not controverted by affidavit, as authorized by § 153, Tit. 13, supra. In this connection, see Ex parte R. A. Brown & Co., supra.

■ We have held that "in order to require a judge at law to transfer a cause to equity under authority of Title 13, section 153, Code, the motion must not only withstand such test as if it were an original bill seeking equity (Ex parte Griffin, 243 Ala. 672, 11 So.2d 738; Ex parte R. A. Brown & Co., 240 Ala. 157, 198 So. 138), but two other conditions must appear as required by the statute: (1) The equitable right or defense must be sufficient to dispose of the cause; and (2) it cannot have that effect on the law side of the court." Ex parte Adams Const. Co., 251 Ala. 347, 348, 37 So.2d 497, 498. However, a decision on the motion is not res judicata on the issue of the claimed equitable right or defense. Ex parte Perusini Const. Co., 242 Ala. 632, 636, 7 So.2d 576; Whitten v. Sheffield Land Co., 233 Ala. 580, 581, 173 So. 48.

■ When a motion to transfer to equity is granted, the movant becomes the complainant and it is incumbent on him to file in the equity court a bill of complaint seeking relief on the basis of the equitable right or defense asserted in the motion. Cornelius v. Moore, 208 Ala. 237, 238, 94 So.

57. But this does not mean that relief in equity may not also be sought on other equitable grounds nor that all of the grounds made the basis of the motion must be substantiated in the equity court. Ballentine v. Bradley, 238 Ala. 446, 451, 191 So. 618; Ex parte Perusini Const. Co., 242 Ala. 632, 7 So.2d 576, supra. So long as there is one equitable right or defense which is dispositive of the cause but which cannot be availed of in the law side of the court, that is sufficient. Of course, the proceedings in equity follow the same course as if the cause had originated there.

We come, then, to consider whether the motion, on demurrer, sufficiently states at least one equitable right or defense entitling defendant to have the cause transferred to equity. We are persuaded that it does.

Code 1940, Tit. 9, § 59, provides as follows:

"§ 59. When contract may be revised.—When, through fraud, or a mutual mistake of the parties, or a mistake of one party, which the other at the time knew or suspected, a written contract does not truly express the intention of the parties, it may be revised by a court of equity on the application of the party aggrieved, so as to express that intention, so far as it can be done without prejudice to the rights acquired by third persons, in good faith and for value."

There appears to be no doubt that one of the "equitable right or defense" relied on for transfer is that the insurance contract, "through * * * a mutual mistake of the parties, * * * does not truly express the intention of the parties." The question is whether the motion sufficiently alleges such mutual mistake.

The motion, as last amended, contains the following allegations:

"1. Defendant avers that this suit is brought by plaintiff as beneficiary upon a policy of life insurance issued by this de-

fendant, numbered 17 330 032 A, under which plaintiff claims that defendant agreed to insure the life of Luther Booker, now deceased in the sum of $7,000; that said policy sued on was issued by defendant pursuant to a written application signed and dated by said Luther Booker on, to-wit, July 6, 1948, and a written amendment thereto dated September 2, 1948, and signed by said Luther Booker on, to-wit, September 10, 1948, and under and by reason of facts and circumstances hereinafter set forth; that said Luther Booker applied for said insurance in the exercise of conversion rights to which he was entitled under Group Policy No. 6770–GLHD issued to St. Louis-San Francisco Railway Company under which group policy said Luther Booker had formerly been insured as an employee of said railroad company in the amount of $7,000; that said Exhibit 2 is a true and correct copy of the policy sued on, which exhibit is made a part of this motion, and which exhibit also contains a true and correct copy of said written application and said written amendment thereto.

"2. Defendant further avers that in said original written application said Luther Booker applied for issuance of a policy of life insurance in the amount of $7,000 under an insurance plan described as 'whole life paid up at age 65', with premiums payable monthly and with plaintiff as the primary beneficiary of said insurance; that one George W. Nethery as the soliciting agent for defendant received said original application from said Luther Booker and at the same time collected for defendant from said Luther Booker the sum of $57.19 as a payment in advance on account of the first monthly premium on the policy of insurance applied for; that thereafter, during the month of August, 1948, defendant informed said Luther Booker through said Nethery that the plan of insurance applied for, viz., whole life paid up at age 65, could not be issued by defendant, but that defendant would issue in lieu thereof a policy of insurance on its usual and customary form for

any one of the following described plans at the monthly premium indicated:

a) whole life paid-up at age 85 – $66.18
b) 20 payment life                        66.22
c) 30 payment life                        66.50
d) 30 year endowment                65.10;

that during said month and on or before August 17, 1948 said Luther Booker or plaintiff, acting for and in his behalf, thereupon requested defendant to issue a policy of life insurance on said plan known as '30 year endowment'; and that on, to-wit, August 7, 1948, said Luther Booker or plaintiff paid to defendant the additional sum of $10.00 to be applied on account of the first monthly premium on said policy of insurance, all in accordance with the provisions of said original application dated July 6, 1948, which specified that the first premium on an individual policy issued under the conversion rights set out in said group policy was required to be paid to and accepted by the Company during the lifetime of the applicant as a condition precedent to the issuance of such a policy, and further in accordance with the provisions of said group policy as hereinbelow more particularly averred.

"3. Defendant further avers that the conversion rights of employees insured under said group policy were provided in Article IV, Section 12 thereof, which in words and figures provided as follows:

" 'Section 12. Conversion Privilege— Upon termination of employment of any Employee all his insurance hereunder shall cease in accordance with the Formula, and the said Employee shall be entitled to have issued to him by the Company without evidence of insurability and upon application made to the Company within thirty-one (31) days after such termination of employment, and upon the payment of the premium applicable to the class of risk to which he belongs and to the form and amount of the policy at his then-attained age (nearest birthday), a poli-

cy of Life Insurance in any one of the forms customarily issued by the Company, except Term Insurance, in an amount equal to or, at the option of the Employee, less than the amount of his Life Insurance under this Policy at the time of such termination.

" 'An individual policy so applied for shall become effective only upon the cessation of insurance hereunder of the Employee so applying. The Company shall, upon the cessation of the Life Insurance hereunder on any Employee because of termination of employment, be released from any liability on account of such Employee unless and until such individual policy is issued in accordance with the provisions of this Section, except as provided in Section 2 hereof.';

that said Section 12 above quoted is the only provision in said policy setting out the conversion rights of employees insured thereunder; that upon termination of the employment of said Luther Booker by said railroad, defendant was under a contractual obligation to him, pursuant to the above quoted provision of said group policy, to issue to him without evidence of insurability, upon his request and application therefor within the period specified, and upon payment in advance of the required premium, a policy of life insurance in any one of the forms, except term insurance, customarily issued by defendant to individuals of the age of said Luther Booker; that said Luther Booker ceased work for said railroad on, to-wit, the month of May, 1948; that within the period specified, said Luther Booker notified defendant of his desire to exercise his said conversion privileges and on, to-wit, July 6, 1948, said Luther Booker signed said original application in which he applied for a policy of insurance on defendant's policy form known as 'paid up at age 65', although on the date of said application said applicant was over the age of sixty-five years, as shown by said application; that such form of policy was not a form customarily issued to individuals

over the age of sixty-five years and such form or plan of insurance could not be issued to said Luther Booker; but defendant avers that the form or plan of insurance known as '30 year endowment' was among others one of the plans customarily issued to individuals of the age and class of said Luther Booker; that as a consequence thereof defendant was under a contractual obligation to issue to said Luther Booker a policy of insurance on said 30 year endowment plan as requested by him and on the policy form customarily issued by defendant.

"4. Defendant further avers that at its Home Office in New York, New York, it did then cause to be prepared a policy of life insurance on its printed form customarily used for the plan known as '30 year endowment' on a monthly premium basis as requested and directed by said Luther Booker, the monthly premium being the sum of $65.10; that its decision to issue such policy was predicated upon and it acted in reliance on said original application of said Luther Booker except as amended by said change in the plan of insurance which change defendant avers was made with the knowledge and consent of and at the request of said Luther Booker or of plaintiff acting as his agent and further that it was required to issue such insurance under the above quoted provision of said group policy; that defendant did further cause to be prepared said written amendment to said original application to reflect the change in the plan of said insurance; that said policy was agreed to be issued as of August 1, 1948; that said policy was prepared by employees of defendant in its said Home Office by the completion of blanks on defendant's printed form 1309 (A) Ord, which was the form customarily used for a policy of insurance on a 30 year endowment plan; that said Exhibit 1 is a true and correct copy of the policy of insurance agreed to be issued to said insured, which exhibit is made a part hereof. Defendant is informed and believes and so avers that said Exhibit

2 is a true and correct copy of the policy actually issued to said insured.

"5. Defendant avers that clerical mistakes or scrivener's errors were made in the completion or filling in of certain blanks on the first page of the policy so prepared, which are shown by comparison of the first pages of said Exhibit 1 and said Exhibit 2, and which consisted of completing the following sentence on page 1 of Exhibit 2 to read as follows (the typed insertions on said printed form being underlined):

" 'Thereafter a Quarterly premium of equal amount is payable on the 1st day of each November February May and August (herein called the due date) until Thirty full years premiums, including the first premium, shall have been paid or until the prior death of the insured.'

whereas, said sentence as shown by page 1 of Exhibit 1 should have read:

" 'Thereafter a Monthly premium of equal amount is payable on the 1st day of each Month (herein called the due date) until Thirty full years premiums, including the first premium, shall have been paid or until the prior death of the insured.';

that said clerical mistakes or scrivener's errors resulted in specifying that premiums subsequent to that for the first month were payable quarterly on the first days of November, February, May and August, instead of monthly on the first day of each month.

"6. Defendant further avers that said policy of insurance was so completed with said clerical mistakes or scrivener's errors was delivered to said Luther Booker on, to-wit, September 10, 1948, along with said written amendment to said application for insurance; that said mistakes or errors were not detected by defendant or by any of its employees or agents; that at the time of delivery of said policy to said Luther

Booker, said Luther Booker executed said written amendment to said application and delivered the original thereof to said Nethery for transmission to defendant and that a copy of said application amendment was physically attached to said policy as appears from Exhibit 2 hereto. Defendant is informed and believes and so avers that neither said Luther Booker nor plaintiff noticed said mistakes or errors in the completion of said blanks on page 1 of said policy of insurance at the time of delivery thereof or until after this suit was filed and until plaintiff's attention was directed thereto by one of plaintiff's attorneys. Defendant also avers that the agreement between defendant and said Luther Booker was that said policy of insurance was to be issued on the basis of monthly premiums, each in the amount of $65.10; that said policy was issued and delivered by defendant and was accepted and received by said Luther Booker on the basis of payment of monthly premiums in said amount and not on the basis of payment of quarterly premiums in said amount; that defendant and both said Luther Booker and plaintiff believed that said policy as issued specified monthly premiums in said amount and were unaware of said mistakes or errors.

"7. Defendant further avers that it did thereafter mail to said Luther Booker written premium notices for some or all of the months from October, 1948, through March, 1949, which notices specified that a monthly premium in the amount of $65.10 would be due on the first of each such month, a true and correct copy of the premium notice for the month of March, 1949, being attached hereto as Exhibit 4 to this motion and made a part hereof, each of said notices being substantially identical with said Exhibit 4; that plaintiff or said Luther Booker or both thereafter paid premiums in the amount of $65.10 for the months of September, October, November and December of the year 1948, and for the months of January and February of 1949, or a total of seven monthly premiums, the premium for the month of August, 1948, having been theretofore paid as above stated; that each of

said premiums was paid and intended to be paid to maintain said policy of insurance in force and effect for a period of one month and not for a period of three months or one quarter of a year, and that said premiums were so received by defendant; that defendant did deliver to said Luther Booker or to plaintiff its official premium receipt for each of said premiums so paid, except for the premium for the month of August, 1948, which receipt acknowledged payment of a monthly premium and not a quarterly premium. Defendant also avers that notwithstanding the language of said premium notices, the payment of premiums monthly or the language of said premium receipts, neither said Luther Booker nor plaintiff ever advised any officer, agent or employee of defendant that they or either of them claimed that premiums were due quarterly and not monthly or that each or any of the payments of premiums so made would or should maintain said policy in force and effect for a period of three months instead of a period of one month.

"8. Hence, defendant avers that on account of the facts hereinabove set forth, said policy of insurance as shown by said Exhibit 2 was so completed and issued to plaintiff erroneously and based on a mutual mistake of fact, in that both defendant and said Luther Booker and plaintiff were under the misapprehension and mistaken belief that said policy contract provided for monthly premiums in the amount of $65.10 rather than quarterly premiums in said amount.

"9. Defendant avers in the alternative that, if defendant is mistaken in alleging that both said Luther Booker and plaintiff were unaware of said mistakes and errors in the completion of said policy of insurance at the time of delivery thereof, and if in fact either plaintiff or said Luther Booker or both noticed or knew at said time that said policy as so completed did purport to specify quarterly premiums instead of monthly premiums, then that said Luther Booker and plaintiff, either or both, received and accepted said insurance policy well

knowing that the understanding and agreement was for a monthly premium in said amount and not a quarterly premium in said amount and well knowing of the mistakes or errors made in defendant's home office in the completion of said blanks; but neither said Luther Booker nor plaintiff called said mistakes or errors to the attention of any officer, agent or employee of defendant at said time or thereafter until after this suit was filed, which failure to disclose the existence of said mistakes or errors was fraudulent or inequitable conduct on the part of plaintiff or said Luther Booker or both; hence, in the alternative, defendant avers that said policy of insurance sued on was issued on and pursuant to a unilateral mistake on the part of defendant and fraud or inequitable conduct on the part of said Luther Booker or plaintiff.

"10. Defendant further avers that following the payment of the premium for the month of February, 1949, no further premiums were paid on said policy of insurance and said insurance in accordance with the terms of said policy lapsed for non-payment of premiums and was automatically converted or continued as non-participating paid-up term insurance for an amount equal to the face amount of said policy and for a term computed in accordance with Section 14 of page 5 of said policy, said policy provisions all being shown in said Exhibits 1 and 2 attached hereto, which are identical except as above noted; that said policy and the term insurance and all of the rights of the insured thereunder expired prior to the death of the insured which occurred on February 3, 1950. Defendant also avers that said table of provisions and benefits on surrender or lapse contained in Section 14 of said policy was prepared and computed on the basis of monthly premiums in the amount of $65.10 and not on the basis of quarterly premiums of like amount.

"11. Defendant further avers that the original policy issued to said Luther Booker was the only written record on which said mistakes or errors were made; that all of

defendant's records showed that said policy was issued for a monthly premium of $65.10; and that neither defendant nor any of its employees or agents had any knowledge of the existence or fact of said mistakes or errors until after suit was filed and plaintiff, through her counsel, advised defendant's counsel as to the same and as to plaintiff's contentions with respect thereto.

"12. Defendant further avers that plaintiff now claims that some or all of said premiums so paid were quarterly premiums, that sufficient quarterly premiums were paid to keep and maintain said policy of insurance in force and effect up to the date of death of said Luther Booker or up to a date sufficiently close thereto so that said policy would have been in force and effect at the date of death either under Section 4 or under Section 14 thereof, whereas in truth and in fact all insurance terminated prior to the death of said insured.

"13. Defendant further avers that if the policy agreed to be issued and issued had specified a quarterly premium, the same would have been slightly less than three times said monthly premium; that if the policy agreed to be issued and issued had specified an annual premium, the same would have been $740.74, and that such quarterly premium would have been slightly more than one-quarter of said annual premium; that defendant's records which show the premiums applicable to said insurance issued to said Luther Booker show both a monthly premium of $65.10 and an annual premium of $740.74, which is in accordance with defendant's custom and practice with monthly premium policies, but that said records do not show that the quarterly premium for such a policy was ever computed or what its exact amount would have been; that said policy was issued to said insured while he was a resident of the State of Mississippi and said policy was delivered within the State of Mississippi; that under and in accordance with the laws of the State of Mississippi, and more particularly, Section 5633 and Section 5681 of the Code' of Mississippi, 1942, which were then in force and effect, a true and correct copy of which are set out in said Exhibit 3 which is made a part of this motion, said insurance contract was deemed to have been made within the State of Mississippi and said policy would have been illegal and issued in violation of said laws, if in fact the contract and agreement between plaintiff and defendant had provided for a quarterly premium of $65.10 instead of a monthly premium in said amount, in that defendant would have been guilty of making a distinction or discrimination in favor of said Luther Booker and against individuals of the same class and equal expectation of life in the amount of the payments of premiums or rates charged for policies of life or endowment insurance.

"14. Defendant avers that on account of the facts herein set forth, it is entitled to reformation of the policy of insurance sued on to correct the clerical mistakes or scrivener's errors above set forth; that it cannot have said policy reformed on the law side of this court, but that said cause must be transferred to equity to give to defendant the relief to which it is entitled; and that upon reformation of said policy to conform with the agreement between defendant and said insured, defendant will have a defense to this suit, but that it cannot assert said defense on the law side of this court until after reformation of said contract of insurance."

Although the motion contains some allegations which, when considered alone and without their relationship to other allegations, might appropriately be termed "conclusions" of the pleader, we think it also contains factual averments sufficient to give it equity (considering the motion as though it were a bill in equity) on the ground of mutual mistake with respect to the premium payment periods. As to whether any other equitable "right or defense" is sufficiently alleged, there is no necessity of deciding.

In Clipper v. Gordon, 253 Ala. 428, 430, 44 So.2d 576, 577, this court had under consideration the sufficiency of a bill for reformation on the ground of mutual mistake. What was there said is of particular significance here, viz.:

"It is well established that a court of equity in this state has jurisdiction to reform a written instrument so as to make it conform to the intention of the parties when through a mutual mistake of the parties, their intention is not expressed. * * *

"We recognize the rule, as noted by appellants' counsel, requiring great particularity of averment in bills of this character, Amberson v. Patterson, 227 Ala. 397, 150 So. 353, and cases cited; but our cases are to the effect that *the rule does not call for a strained and unreasonable construction of the language used or undue refinement or nicety of pleading. The bill is to be construed as a whole and its wording given a reasonable and not unnatural construction. * * *.*" [Emphasis supplied.]

One of the propositions stated in brief on behalf of respondent is that "where an insurance policy is drawn by an insurance company a mistake made in drafting the policy is the mistake of the insurance company alone and there is a want of mutuality of mistake." However, this does not appear to be seriously insisted on. The approved rule is stated in Ballentine v. Bradley, 238 Ala. 446, 450, 191 So. 618, 621, as follows:

"Defendant further says the draftsman, who was an attorney, was in that capacity representing plaintiff, the purchaser, and is corroborated by two affidavits which were offered in evidence. This was denied by plaintiff, and by the affidavits he offered.

"Much stress is laid upon this feature of the proof. But if in fact the parties had agreed upon a sale of the land which only was located south of the Buck Bridge Road, and that no land north of this road was sold or intended to be sold, mutuality of the mistake was made to appear, and it would be immaterial whom the draftsman represented, nor would it be fatal to relief even if defendant herself had written the deed. The following from McCaskill v. Toole, 218 Ala. 523, 119 So. 214, expresses this thought: 'Where an accord of minds is reached, and the document intended to express such agreement fails so to do by reason of the mistake of the draftsman, it is immaterial who employed him. His mistake was merely the occasion of the parties executing a paper not expressive of their common intent. No matter if one of them is the draftsman, the real concern is: Does it express the agreement of the parties?' See, also, 53 Corpus Juris 948."

See, also, Clipper v. Gordon, 253 Ala. 428, 431, 44 So.2d 576, supra, where the foregoing extract was quoted with approval.

Another insistence is that the alleged mistake was due to negligence on the part of the insurance company and that such negligence is a bar to reformation of the policy. What was said in Clipper v. Gordon, supra, is sufficient answer to this insistence, viz.:

"In Ballentine v. Bradley, supra, we said:

" 'But the highest possible care is not demanded. As said by Mr. Pomeroy in 2 Pom.Eq.Jur., section 856, "even a clearly established negligence may not, of itself, be sufficient ground for refusing relief, if it appears that the other party has not been prejudiced thereby"—a statement which this court approvingly quoted in Kinney v. Ensminger, 87 Ala. 340, 6 So. 72. And in Gralapp v. Hill, 205 Ala. 569, 88 So. 665, the negligence that would bar relief is referred to as "culpable and injurious negligence." Mr. Pomeroy's

further observation, that "the neglect must amount to the violation of a positive legal duty," is approved. See, also, Cudd v. Wood, supra [205 Ala. 682, 89 So. 52], and 53 Corpus Juris 974. Under the rule of these authorities, defendant is not barred of relief by any matter of negligence.' 238 Ala. 450, 191 So. 621."

We do not think the allegations of the motion show any "culpable and injurious negligence" on the part of petitioner or negligence on its part amounting "to the violation of a positive legal duty."

As to the effect of negligence on the right to reformation we quote the following from Williston on Contracts, Rev.Ed., Vol. V, § 1596, pp. 4447–8:

"It is frequently said that equity will not reform or rescind a contract if the petitioner has been guilty of negligence, or at any rate of gross negligence. That no such principle can be laid down as a universal rule is obvious. In many if not most cases of mistake in the expression of a contract where reformation is granted, there is some element of lack of care, but, at least, if the mistake is mutual and each party has been careless in failing to make a contract expressing the real intention of both, there seems no reason why relief should not be granted, unless this is made inequitable by some change of position other than merely entering into the contract in question. * * *"

The order sustaining the demurrer to the motion does not indicate which of the 209 grounds of demurrer were considered by the court to be good. However, it is stated in petitioner's brief as follows:

"As we understand the decision of the court below, demurrer was sustained to the motion on the theory that there was no antecedent meeting of the minds, (hence, no prior understanding to which the policy could be reformed), simply because the amended application reflecting and ratifying this change in the plan of insurance did not antedate delivery of the policy."

It seems to us that the motion clearly shows an agreement and understanding—"a meeting of the minds"—of the parties in the respect that the premiums were to be paid on a monthly basis and not on a quarterly basis. It is averred in the motion "that the agreement between defendant and said Luther Booker was that said policy of insurance was to be issued on the basis of monthly premiums, each in the amount of $65.10; that said policy was issued and delivered by defendant and was accepted and received by said Luther Booker on the basis of payment of monthly premiums in said amount and not on the basis of payment of quarterly premiums in said amount; that defendant and both said Luther Booker and plaintiff believed that said policy as issued specified monthly premiums in said amount and were unaware of said mistakes or errors." The application by Booker was made a part of the policy later issued to him. In it monthly payment periods were requested. In effect, the application was an offer on the part of Booker which the insurance company accepted on issuing the policy. It was at the time of issuance of the policy that the minds of the parties met.

In Appleman's Insurance Law and Practice, Vol. 13, § 7608, p. 364, it is said:

"The insurer's approval of an application and the issuance of a policy, though the policy was, by mistake, different from that applied for, constituted an antecedent agreement as regards a right to reformation."

Cited to the foregoing text is Columbian Nat. Life Ins. Co. v. Black, 10 Cir., 1929, 35 F.2d 571, 574, 71 A.L.R. 128. From that case we quote the following:

"2. Lack of antecedent agreement. It is quite true that before a writing may be reformed to express the real agreement of the parties, the parties must have agreed. Rescission may sometimes be had because there is no

agreement; but reformation necessarily implies an agreement. * * * From this premise, counsel argues that, since the policy issued did not conform to the application, the policy was only a counter offer, and there was therefore no antecedent contract. This ingenious argument, if sound, means there never can be a reformation of a policy of insurance issued on an application. The wilderness of cases in the books reforming policies so as to make them conform to the application is sufficient answer to the argument. * * *

* * * * * *

"The logical answer is that when the company approves the application as made, and issues a policy, it manifests its intention of accepting the application. There is, at that moment, a meeting of the minds—an agreement to issue the policy applied for. * * *

"In the ordinary case a policy of fire insurance is issued on a written application, and the policy misdescribes the property, or its location, or the assured's interest therein. Reformation, to make it correspond to the application, follows almost as a matter of course. Yet defendant's ingenious argument, if sound, would render powerless the courts of equity to rectify any such error."

We think the averments of the motion bring the case fairly within the principles stated above; that a mutual mistake with respect to the premium payment periods was sufficiently alleged in the motion; and that the demurrer to the motion should have been overruled. Accordingly, the peremptory writ of mandamus is due to be awarded unless the respondent, after being advised of this opinion, is content to expunge the contested order from the minutes of the court.

Writ awarded conditionally.

LIVINGSTON, C. J., and SIMPSON and COLEMAN, JJ., concur.